# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WAYNE ROBINSON,**

       **Petitioner,**

**v.**                                                        **Civil Action No. 3:08cv148**
                                                               **(Judge Bailey)**

**KUMA J. DEBOO, Warden,**

       **Respondent.**

## OPINION/REPORT AND RECOMMENDATION

The above styled case is before the undersigned for consideration of the *pro se* petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, the government's response and the petitioner's Motion for Summary Judgment. In the petition, the petitioner challenges a disciplinary proceeding that resulted in the loss of good conduct credit.

### I. Petitioner's Disciplinary Proceedings

On November 9, 2007, the petitioner received an incident report in which he was charged with a violation of prohibited act code 310, Unexcused Absence from Work or Any Assignment. Resp't Ex. 1, Att. 1. The report stemmed from an incident earlier that day when the petitioner failed to appear at Chapel callout for Jumah prayer. *Id.* When the Chaplain discovered that the petitioner had not signed in, the Chaplain telephoned the petitioner's housing unit and discovered that the petitioner was still at his housing unit. *Id.* Because the petitioner was not excused from Chapel callout, an incident report ensued. *Id.*

At the time the petitioner received a copy of the incident report, he was advised of his rights. *Id.* at Section 23-24. The petitioner stated to the investigating officer that he was not aware that the

time for Jumah prayer had been changed from 1:30 to 12:30.  *Id.* at Section 24.

A Unit Disciplinary Committee Hearing[1] ("UDC") was held on November 14, 2007.  *Id.* at Section 21.  The petitioner again stated that he did not know that prayer time had been changed.  *Id.* at Section 17.  Because of this admission, the charges were referred to a Disciplinary Hearing Officer ("DHO") for further proceedings.[2]  *Id.* at Section 19.  In addition, the UDC recommended that the petitioner be sanctioned to loss of good time and disciplinary segregation, suspended pending six months clear conduct.  *Id.* at Section 20.

On November 14, 2007, the petitioner received a Notice of Discipline Hearing Before DHO form.  Resp't Ex. 1, Att. 2.  The petitioner was also advised of his rights.  Resp't Ex 1, Att. 3.

A DHO hearing was held on November 20, 2007.  Resp't Ex. 1 at Att. 4.  At the beginning of the hearing, the petitioner was again advised of his rights.  *Id.* at Section I (C).  The petitioner stated that he understood.  *Id.* at Section III (B).  Moreover, when asked for a statement, the petitioner stated that he took full responsibility.  *Id.*  Specifically, the petitioner stated that he had been at FCI-Gilmer since May 1st and this was the first time that Jumah Prayer had been held at 12:30 p.m. instead of 1:30 p.m.  *Id.*  Based on the petitioner's statement, and the written testimony of Chaplain Uhles, the DHO found that the greater weight of the evidence showed that the petitioner committed the prohibited act of Unexcused Absence from Work or Any Assignment.  *Id.* at Section V.  Therefore, the petitioner was sanctioned 14 days loss of good time and 21 days disciplinary

---

[1] Pursuant to 28 C.F.R. §§ 541.2 and 541.15, a Unit Disciplinary Committee consists of one or more staff members who hold an initial hearing within 3 working days from the date staff became aware of an incident to determine whether the prohibited act, or a similar one, was committed, not committed, or whether further proceedings are needed.

[2] Pursuant to 28 C.F.R. §§ 541.2, a disciplinary Hearing Officer is an independent hearing officer who conducts disciplinary hearings referred for further action by the UDC and who imposes sanctions if a violation is found.

segregation, suspended pending six months of clear conduct. *Id.* at Section VI. The DHO reasoned that such sanctions were warranted because being absent from an assignment without permission interferes with the prison's ability to account for all inmates, threatens the security of the institution and wastes resources. *Id.* at Section VII.

The petitioner was notified of his right to appeal the DHO's decision, and did so. *Id.* at Section VIII; Resp't Ex. 1 at ¶ 9. The petitioner's appeals were denied. Resp't Ex. 1 at ¶ 9.

## II. The Pleadings

### A. The Petition

In the petition, the petitioner asserts that the disciplinary report should be expunged from his record, and his good conduct time restored, for the following reasons:

1) because the incident report is erroneous and slanderous; and

2) because there is insufficient evidence to support the DHO's finding.

### B. The Government's Response

In its response, the government asserts that relief should be denied because:

1) the petitioner received all the process he was due; and

2) the evidence is sufficient to support the DHO's findings.

### C. The Petitioner's Motion for Summary Judgment

On January 23, 2009, the petitioner filed a Motion for Summary Judgment. In support of that motion, the petitioner asserts that the incident report is erroneous because it charges that he was absent from work or any assignment when in fact he was absent from Jumah prayer, which is a religious ceremony. The petitioner argues that because a religious ceremony is not work or an assignment, he cannot be guilty of charged violation. Rather, the petitioner asserts that the facts

show that he was merely "out of bounds" in violation of code 316, Being in an Unauthorized Area, at the time in question. For these same reasons, the petitioner asserts that the greater weight of the evidence shows that he violated Code 316, not Code 310, and therefore, there is insufficient evidence to support the DHO's finding.

### III. Analysis

The Federal Bureau of Prisons ("BOP") is charged with the responsibility of administering the federal prison system. See 18 U.S.C. § 4042. Included in this duty is the obligation to provide for the protection, instruction and *discipline* of all persons charged with or convicted of offenses against the United States. § 4042(a)(3) (emphasis added). Therefore, the BOP has promulgated rules for inmate discipline. See 28 C.F.R. § 541.10, et seq.

Moreover, prison disciplinary proceedings are not part of a criminal prosecution, therefore, the full panoply of rights that are due a defendant in a criminal proceeding do not apply in prison disciplinary proceedings. Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975 (1974) ("there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution"). However, inmates are entitled to some due process protections. *Id.* Those protections include: written notice of the charges at least 24 hours before a hearing to enable the inmate to prepare a defense; to call witnesses and present documentary evidence if doing so is not an undue hazard to institutional safety, and a written explanation of the evidence relied on and reasons for disciplinary action. *Id.* On the other hand, an inmate does not have a right to confrontation and cross-examination, or a right to counsel. *Id* at 567, 570. Disciplinary decisions comport with the requirements of procedural due process when there is "some evidence" to support the disciplinary decision by the fact finder. Superintendent, Mass. Corr. Institution v. Hill, 472 U.S.

4

445, 117 S.Ct. 1584 (1985).

In this case, it is undisputed that the petitioner received all of the due process safeguards delineated in Wolff. The essence of the petitioner's claim is whether being absent from Jumah Prayer is an unexcused absence from *work or assignment* and whether he should have been charged for a violation of Code 316, instead of Code 310.

The petitioner's claim that being absent from Jumah prayer does not constitute work or an assignment is misplaced. The petitioner was not disciplined for being absent from prayer, but for missing Chapel callout. As noted by the respondent, a callout is an appointment (or assignment) which authorizes and directs an inmate to be in a specific area of the institution at a specific time. Resp't Memorandum (dckt. 17) at 5, n. 3. Moreover, Code 316 is typically used when an inmate is not in an area they are supposed to be at a particular time. *Id.* at 10, n. 4. Thus, pursuant to his Chapel callout, the petitioner was supposed to be in the Chapel at 12:30 p.m. on November 9, 2007. By his own admission, the petitioner was in his housing unit instead. The petitioner was clearly not in the area to which he was assigned at that particular time. As noted by the DHO, such a situation is a threat to the security of the institution and requires extra resources be expended to find the missing inmate. Thus, the petitioner was appropriately charged under Code 310.

Likewise, the petitioner could have been charged with a violation of Code 316. The petitioner admits that he was in his housing unit when he should have been at Chapel. The petitioner therefore concedes that he was in an unauthorized area and is guilty of violating Code 316. However, even assuming that the petitioner should have been charged under Code 316, the petitioner cannot state a claim because he cannot show that he has suffered any injury. Code 310 and 316 are both prohibited acts in the moderate category range and carry the same penalty. See Program Statement ("P.S.") 5270.07, Chapter 4, Page 10-12. In addition, a violation of either prohibited act

carries the same threat to security, and requires the same expenditure of additional resources, which justifies the sanctions actually imposed. Thus, the petitioner suffers the same fate regardless of whether he was charged with violating Code 310 or Code 316. Consequently, the plaintiff cannot show that any injury occurred as a result of allegedly being charged under the wrong Code number.

As to his sufficiency of the evidence claim, the petitioner's argument is again misplaced. As noted above, the petitioner was admittedly assigned to Chapel callout at 12:30 on November 9, 2007. The petitioner admittedly did not attend that assignment. There was clearly some evidence to support a finding that the petitioner violated Code 310, Unexcused Absence from Work or Any Assignment. Further, the BOP's decision is not a violation of the petitioner's religious rights as the petitioner was not disciplined for failing to show up for a religious ceremony, he was disciplined for failing to show up at his assigned area at the assigned time. Chapel callout, although not "work," can clearly be construed as an "assignment, " as it is an appointment which authorizes and directs an inmate to be in a specific area at a specific time.

## IV. Recommendation

For the foregoing reasons, the undersigned recommends that the respondent's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (dckt. 16) be **GRANTED**, the petitioner's Motion for Summary Judgment (dckt. 21) be **DENIED** and the petitioner's § 2241 petition (dckt. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable John Preston Bailey, United

States District Judge.  Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt, to his last known address on the docket, and to counsel of record via electronic means.

DATED: April 16, 2009.

_____
DAVID J. JOEL
UNITED STATES MAGISTRATE JUDGE